IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| ROBERT J. MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:08-cv-1149 (AJT/TCB) |
| | ) | |
| GARY LOCKE, Secretary, U.S. | ) | |
| Department of Commerce, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter is before the Court on the Government's Motion for Summary

Judgment. Plaintiff alleges a claim of age discrimination under the Age Discrimination

in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621. The Government seeks

summary judgment on the grounds that Plaintiff, Robert Miller ("Miller"), has failed to

provide evidence that his age was a factor in his employer's decision to discharge him.

Based on the undisputed facts, and for the reasons stated below, the Court grants the

Government's Motion for Summary Judgment.

## I. STATEMENT OF FACTS

On May 1, 2006, Plaintiff was hired as a patent examiner at the United States Patent

and Trademark Office[1] ("USPTO"), Level GS-9, Step 10. First Am. Compl. for Age

Discrimination ("Am. Compl.") at ¶ 11. Plaintiff was born in 1965 and was more than

---

[1] USPTO is divided into various "Technology Centers," which are organized by science
or technology and managed by a "Group Director." *See* Def. Mem. in Supp. of Mot. for
Summ J. ("Def. Br."), Ex. 1. The Technology Centers are subdivided into "Art Units,"
which are responsible for examining particular classes of technology. *Id.* Art Units are
managed by a Supervisory Patent Examiner ("SPE"). Each patent examiner is assigned
to one of these art units. *Id.*

forty years of age at the time he was hired. *Id.* at ¶ 7. Plaintiff was hired by SPE Carl Friedman ("Friedman") and John Love ("Love"), the Director of Technology Center 3600. *Id.* at ¶ 11; *see also* Def. Br., Ex. 3. Friedman and Love were also over the age of forty when Plaintiff was hired. Am. Compl. at ¶ 7. Friedman, as a SPE, reported to Love. Shortly after Plaintiff was hired, Love was replaced by Wynn Coggins ("Coggins"). *See* Def. Br., Ex. 5; Am Compl. at ¶¶ 12, 13. Friedman, in turn, began to report to Coggins. *See* Def. Br., Ex. 5. Once Plaintiff began work at USPTO, he was assigned to Art Unit 3635, where Friedman became his first-line supervisor. *Id.* Naoko Slack ("Slack") replaced Friedman on July 23, 2006 as Plaintiff's first-line supervisor. Am. Compl. at ¶ 15. Seven of the twenty-one employees of Art Unit 3635 were over the age of forty at the time Plaintiff was hired. *See* Def. Br., Ex. 8.

As with all newly hired patent examiners, Plaintiff was placed on a one-year probationary period. *See* Pl. Opp. Mem. to Mot. for Summ. J. ("Pl. Br."), Ex. 3. This probationary period provides an opportunity for USPTO supervisors to observe a probationary employee's performance, character, conduct and attitude before making a decision to retain the employee on a permanent basis. *See* Def. Br., Ex. 10. If USPTO decides to remove a probationer for post-hire performance or conduct, the agency's only obligation is to notify the probationer in writing of his inadequacies and his effective date of removal. 5 C.F.R. § 315.805.[2]

---

[2] 5 C.F.R. § 315.805 states in pertinent part: "When an agency proposes to terminate an employee serving a probationary or trial period . . . the employee is entitled to the following: (a) Notice of proposed adverse action. The employee is entitled to an advance written notice stating the reasons, specifically and in detail, for the proposed action."

As a patent examiner in Art Unit 3635, Plaintiff was responsible for the

adjudication of patent applications and the subsequent preparation of "Office Actions."

*See* Def. Br., Ex. 5. Office Actions are documents written by patent examiners that

explain the reasons why a particular patent application does or does not comply with

applicable laws and regulations. *Id.*, Ex. 27. For purposes of evaluating productivity,

patent examiners are not given credit for Office Actions until their SPE or Primary Patent

Examiner ("PPE") has made all necessary corrections to the document. *Id.*, Ex. 6. Once

these individuals have approved the Office Action, the Office Action will count towards

the productivity count of the examiner. *Id.*

USPTO claims that Plaintiff demonstrated performance deficiencies in various

areas throughout his tenure. *See id.*, Ex. 5. Plaintiff's supervisors noted that he failed to

show improvement in his work, that his attitude made him difficult to train, that he

resisted supervision or reacted negatively to criticism, that he had difficulty getting along

with co-workers, that he was argumentative and that he often made rude and

inappropriate comments. *Id.*, Exs. 7, 11. On September 5, 2006, Plaintiff received his

"Probationary Employee Performance Evaluation," in which he received the lowest

possible rating in four of the fourteen categories. *See id.*, Ex. 15. Based on this

evaluation, Plaintiff's first-line supervisor, Naoko Slack, wrote a letter to Plaintiff's

second-line supervisor, Wynn Coggins, recommending that Plaintiff be terminated.[3] *Id.*,

Ex. 16. Plaintiff was issued a notice of termination on September 15, 2006. *Id.*, Ex. 10.

---

[3] Coggins' sworn statement is also included in the record in which she states that she
received regular reports from Friedman and Slack that Plaintiff's performance was
inconsistent. Def. Br., Ex. 7. She also stated that she had reviewed his work product and
that it contained repetitive errors "which demonstrated a failure to take and incorporate

## II. STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some alleged factual dispute between the parties "will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-48 (1986). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be considered. *Id.* at 248.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute of fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). At that point, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." (citations omitted). *Anderson*, 477 U.S. at 249-50; *Holland v. Wash. Homes Inc.*, 487 F.3d 208, 213 (4th Cir. 2007). In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255.

---

feedback." *Id.* Coggins also received reports regarding Plaintiff's poor attitude toward Slack and his repeated resistance to taking instruction from her. *Id.*, Ex. 5.

## III. DISCUSSION

**A.     "Mixed Motive" Analysis and the *McDonnell Douglas* Framework**

The ADEA makes it "unlawful for an employer . . . to discharge any individual. . . because of such individual's age." 29 U.S.C. § 623(a)(1).  The plaintiff in an ADEA case bears the burden of proving that age was a determining factor in the relevant employment decision. *See Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1314 (4th Cir. 1993).  There are two ways in which a plaintiff can establish an ADEA claim: first, through direct evidence showing that age bias motivated the employment decision under the so-called "mixed-motive" method; and second, through circumstantial evidence of discrimination in accordance with the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny.  *Mereish v. Walker*, 359 F.3d 330, 334 (4th Cir. 2004). Plaintiff does not contend that there is direct evidence of age discrimination and relies on the burden-shifting scheme of *McDonnell Douglas*.

Pursuant to the burden-shifting scheme of proof established in *McDonnell Douglas*, an employee must first establish a *prima facie* case of discrimination by a preponderance of the evidence.  *See id.*  To establish a *prima facie* case of unlawful age discrimination, a plaintiff must show that (1) he is a member of the protected class; (2) his employer took an adverse employment action against him; (3) he was performing his job to the legitimate expectations of his employer; and (4) similarly situated employees outside of his protected class were treated more favorably under similar circumstances. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004).  If Plaintiff can make a sufficient showing on these elements, the burden then shifts to the Government to articulate a legitimate, non-discriminatory reason for his termination.

*Hill*, 354 F.3d at 285.  If the Government satisfies that burden, the presumption of discrimination created by the *prima facie* case disappears from the case.  *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 514 (4th Cir. 2006).  Plaintiff must then prove that his employer's proffered justification is pretextual.  That final burden on Plaintiff merges with the ultimate burden of persuading the court that he has been the victim of intentional discrimination.  *Texas Dep't of Community Affairs* v. *Burdine*, 450 U.S. 248, 253 (1981). At all times, the burden of proving age discrimination rests with Plaintiff.  *See Mereish*, 359 F.3d at 334.

**B.    Plaintiff's *Prima Facie* Case**

There is no dispute that Plaintiff satisfies the first two elements of his *prima facie* case, that is, he is a member of a protected class and was the subject of an adverse employment action.  Thus, in order to make out his *prima facie* case, Plaintiff must show that he satisfies the balance of these elements:  (1) that he was performing his job to the legitimate expectations of his employer and (2) that similarly situated employees were treated more favorably.

  1. <u>Legitimate Job Expectations</u>

Plaintiff has not provided sufficient evidence to show that he was meeting the legitimate expectations of his employer.  As a new patent examiner, Plaintiff was required to check patent applications for "(a) compliance with formal requirements and (b) technological accuracy."  Def. Br., Ex. 9.  Plaintiff was to be evaluated on his "ability to (1) learn and independently perform the assigned functions and (2) accept instruction and incorporate feedback with respect to the performance of these functions."  *Id.* Plaintiff was not evaluated solely on the basis of his productivity levels.  *See* Def. Br.,

6

Exs. 7, 9.  In analyzing whether Plaintiff was meeting his employer's legitimate expectations, the perception of the decision-maker is relevant, and not the self-assessment of the employee.  *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996).

Plaintiff offers the following evidence to prove that he was meeting his employer's legitimate expectations.  First, Plaintiff has presented undated "post-it" notes that were allegedly written and attached to his Office Actions by his first-line supervisor, Naoko Slack.  *See* Pl. Br., Ex. 3A.  Plaintiff claims that these notes prove that he was performing to the satisfaction of his supervisor.  *Id.* at 9.  While these notes contain positive statements about his work product,[4] they likely come at the end of an undescribed process of revisions to drafts.  *See id.*  These notes, therefore, do not establish that Plaintiff's overall performance was satisfactory nor do they cast doubt on USPTO's position, as stated in its termination notice, that Plaintiff was terminated because his "work product failed to demonstrate significant improvements."  Def. Br., Ex. 10.

Second, Plaintiff relies on the sworn statement of Robert Canfield ("Canfield"), a co-worker, in which he states that Plaintiff "was doing reasonably well and seemed very receptive to direction."  Pl. Br., Ex. 5.  Canfield states that he "reviewed some of his [Plaintiff's] work" and that "in August and September . . . he seemed to be making steady improvement."  *Id.*  In his sworn statement, Canfield does not claim that he ever had any

---

[4] The individual notes state the following messages: "Great Rob – ready to turn in. Naoko," "Great! Ready to turn in – Naoko," "Rob – This one is signed and ready to turn in – Thanks, Naoko," "Rob, please write 'None' and then initial under each category. Otherwise, nice job!  Naoko," "Robert, Remember to initial here.  Nice job!  Naoko," "Nice job Rob!  Just sign and date this count sheet," "Rob – This action is excellent. Bravo.  Naoko (please initial last page)."  Pl. Br., Ex. 3A.

supervisory responsibilities over Plaintiff. *See id.* Canfield's statement also does not indicate how much of Plaintiff's work product he actually reviewed or whether he had a basis for determining that Plaintiff was "making steady improvement." The record also does not establish that Canfield, as one of Plaintiff's co-workers, was privy to all of the information on which the decision to terminate Plaintiff was based. Thus, Canfield's statement alone cannot be a basis to find that Plaintiff was meeting the legitimate expectations of his employer.

Third, Plaintiff points to his productivity reports and his supervisor's statements that his level of productivity was common or not unusual for a new examiner. *See* Pl. Br., Ex. 1. In response, USPTO states that Plaintiff was terminated not on the basis of his levels of productivity, but because of his failure to demonstrate improvement during his tenure and other reasons, including a poor attitude. *See* Def. Br., Exs. 7, 11. Because the productivity reports were not the sole criterion by which Plaintiff was evaluated, the Court finds that these reports cannot establish that Plaintiff met his employer's performance expectations.

2.    <u>Similarly Situated Employees</u>

Although Plaintiff has not established that he met his employer's legitimate expectations, and has therefore failed to establish a *prima facie* case of age discrimination, the Court will nonetheless consider Plaintiff's argument that similarly situated employees outside of his protected class were treated more favorably than him.

In order to be considered similarly situated, employees must be similarly situated to Plaintiff in all relevant respects. *See JDS Uniphrase v. Jennings*, 473 F. Supp. 2d 705, 712 (E.D. Va. 2007). The employees "must have dealt with the same supervisor, have

been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Nichols v. Caroline County Bd. of Education*, No. JFM-02-3523, 2004 U.S. Dist. LEXIS 2851, at *24 (D. Md. Feb. 23, 2004).

The record shows that there were several employees outside of Plaintiff's class who had comparable productivity levels and four-month evaluations but were not terminated. *See* Pl. Br., Ex. 3. Since these employees were not terminated, Plaintiff claims that the only reasonable inference that can be drawn is that he was fired on account of his age. *See id.* at 3. Although there is evidence before the Court from which the Court could conclude that these employees are not similarly situated, *see* Def. Br., Ex. 11, the Court will assume that these employees were similarly situated to Plaintiff and that they were treated more favorably than Plaintiff. The Court will now proceed to the next step of the *McDonnell Douglas* analysis.

## C.    Defendant's Legitimate, Non-Discriminatory Reason

The Court finds that USPTO has articulated a legitimate non-discriminatory reason for Plaintiff's termination. USPTO claims that Plaintiff "failed to demonstrate a level of competency to perform at [his] grade level." *Id.*, Ex. 10. In Plaintiff's "Probationary Employee Evaluation," Slack stated that Plaintiff needed improvement in the following areas: (1) his ability to learn and independently perform assigned functions; (2) his ability to accept instructions and respond to feedback; and (3) his ability to communicate through both speech and writing. *Id.*, Ex. 15. Plaintiff's second-line supervisor, Coggins, testified that Plaintiff demonstrated inconsistent progress, failed to correct deficiencies in his work product, demonstrated an unwillingness to accept

9

criticism of his work product, and continued to make errors that showed a failure to incorporate feedback. *Id.*, Ex. 7. USPTO claims that Plaintiff demonstrated these deficiencies throughout the probationary period. Additionally, USPTO claims that Plaintiff had a "poor attitude" that made him "difficult to train." *Id.*, Ex. 11. USPTO claims that these were the only reasons for Plaintiff's termination. The Court finds that these are legitimate, non-discriminatory reasons for Plaintiff's termination, and the burden now shifts back to Plaintiff to prove that these reasons are a pretext for unlawful discrimination.

**D.    Plaintiff's Claim of Pretext**

Since USPTO has articulated a legitimate, non-discriminatory reason for its actions, Plaintiff must now demonstrate that the "proffered reason was not the true reason for the employment decision, and that [discrimination] was." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508 (1993). Plaintiff may meet this burden by (1) presenting evidence that his employer's proffered reasons are not worthy of belief, thereby enabling the jury to infer that discrimination was the real reason for the adverse action or (2) presenting evidence that discrimination was, in fact, the employer's real reason. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000); *see also Williams v. Staples, Inc.*, 372 F.3d 662, 669 (4th Cir. 2004). In Plaintiff's attempts to show pretext, he may not recast an employer's legitimate, non-discriminatory reason or substitute his business judgment for that of the employer, but must instead meet each reason head on and rebut it. *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000). For this reason, it is irrelevant whether USPTO was correct in its assessment of Plaintiff's performance, so long as its assessment was, in fact, the true reason for its termination of Plaintiff.

Plaintiff argues that his termination was a pretext for discrimination for the following reasons. First, Plaintiff claims that his productivity reports, when compared to those of similarly situated employees, show that his "performance expectancy was equal or better than average." Pl. Br. at 10. Therefore, Plaintiff contends that his termination must have been for some reason other than USPTO's proffered reasons. *Id.* Second, Plaintiff claims that there is no documentation of any problems with his work before September 5, 2006, including any of the allegedly deficient work product. *Id.* at 4. This absence of contemporaneous evidence, Plaintiff argues, renders USPTO's proffered reasons "bias [*sic*] and suspect." *Id.* at 4, 8. Third, Plaintiff claims that there are inconsistencies between the sworn statements of Slack and Coggins regarding the timing of his termination. *Id.* at 2. In her sworn statement, Coggins stated that the decision to terminate Plaintiff was made after his four-month evaluation, which was issued to Plaintiff on September 5, 2006. Def. Br., Ex. 7. Slack, on the other hand, stated that in a meeting with Coggins towards the end of August 2006, Coggins stated that she had decided to terminate Plaintiff. *Id.*, Ex. 11. Fourth, Plaintiff argues that certain USPTO supervisors made comments that USPTO prefers younger patent examiners. Pl. Br. at 3. These facts, in Plaintiff's view, raise a triable issue of fact as to whether USPTO's proffered reasons are a pretext for age-based discrimination.

The Court finds that this evidence does not constitute evidence sufficient to create a triable issue of fact as to whether USPTO's proffered reasons for Plaintiff's termination are a pretext for discrimination. USPTO made its evaluation criteria clear to Plaintiff in his Performance Appraisal Plan ("PAP"), which he was given in July 2006. Def. Br., Ex. 9. The evaluation form clearly states that Plaintiff would be evaluated on his ability to

"learn and independently perform assigned functions" and "incorporate feedback." *Id.*
Thus, USPTO has consistently stated that the basis for Plaintiff's evaluation extended
beyond his productivity levels, even though those productivity levels factored into his
employer's decision to terminate him.[5]  Also, the discrepancy between the Slack and
Coggins statements regarding the timing of the decision to terminate Plaintiff is
immaterial.  Both Slack and Coggins stated that a decision was made to terminate
Plaintiff after learning of his poor work performance. *Id.*, Exs. 7, 11.  Coggins stated that
she based her statements on negative reports she had received about Plaintiff. *Id.*, Ex. 7.
The precise timing of the decision is irrelevant since the statements of both Slack and
Coggins are consistent insofar as the actual reason for Plaintiff's termination.

Additionally, the absence of written evidence prior to September 5, 2006
pertaining to Plaintiff's performance does not create a genuine issue of material fact as to
whether USPTO's proffered reasons for terminating him are, in fact, the true reasons.
The record establishes that probationary employees were to receive their first evaluation
after four months. *Id.*, Ex. 15.  Thus, the absence of any other evidence documenting
Plaintiff's performance is not surprising.

Lastly, any comments related to an interest in hiring a younger work force, if they
occurred at all,[6] were not part of any discussions associated with Plaintiff. *See Duke v.*

---

[5] Plaintiff claims in his First Amended Complaint that, after August 29, 2006, USPTO
refused to sign off on his work product, and as a result, his productivity count fell to zero.
*See* Pl. Br., Ex. 3; Am. Compl. at ¶ 23.  There is no evidence in the record that would
support the inference that his supervisors' refusal to approve his work product was a
pretext for age discrimination. *See* Def. Br., Ex. 11.

[6] The testimony that Plaintiff relies on concerning his supervisor's interest in hiring a
younger workforce is contained in the May 4, 2009 deposition of Wynn Coggins, who
stated the following: "Well, I can only say that I did not participate in any one-on-one

*Uniroyal*, 928 F.2d 1413, 1417 (4th Cir. 1991). The Court also notes that the individuals who hired Plaintiff (Friedman and Love), the employees that supervised and provided negative reviews of Plaintiff (Coggins, Friedman and Slack), and the persons that decided to terminate Plaintiff (Coggins and Slack), were all over the age of forty and within the same protected class as Plaintiff. *See* Def. Br., Exs. 5, 8. Also, one-third of the patent examiners in Art Unit 3635 were over the age of forty at the time of Plaintiff's termination.[7] For these reasons, the Court finds that Plaintiff has failed to raise a genuine issue of material fact concerning whether the USPTO's proffered reasons are a pretext for discrimination.

## IV. CONCLUSION

Based on the record before the Court, Plaintiff has failed to raise a genuine issue of material fact relating to his claim of age discrimination and the Government is entitled to judgment as a matter of law. The Government's Motion for Summary Judgment is therefore granted.

An appropriate Order will issue.

Alexandria, Virginia
June 12, 2009

Anthony J. Trenga
United States District Judge

---

conversations about hiring a younger workforce . . . I do not recall being in the room when something like that was being addressed." Pl. Br., Ex. 1. Coggins also stated: "In generalities, we've been hiring 1200 employees over the past three years. It may have been part of a conversation, I don't recall." *Id.*

[7] The record does not contain any profile of the age of USPTO employees beyond Unit 3635.